# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVE BLOOMER, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 05-4071 |
| | ) |
| ROCK ISLAND POLICE OFFICERS | ) |
| WILLIAMS and GILLMAN, ROCK ISLAND | ) |
| JAILERS YOUNG, HEMPHILL, PICKETT, | ) |
| and ABBOTT, and MARSHALL DOUGLAS | ) |
| in their individual and official capacities, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Before the Court is Defendant Rock Island Police Officer Williams' and Defendant Rock Island Police Officer Gillman's Motion for Summary Judgment. For the reasons set forth below, the Officers' Motion for Summary Judgment [#21] is GRANTED.

## BACKGROUND

Pro se plaintiff Steve Bloomer ("Bloomer") filed this action under 42 U.S.C. § 1983 and state law, alleging that his constitutional and state law rights were violated by the events leading up to and immediately following his August 30, 2003, arrest. Bloomer's Complaint names several defendants, including Rock Island Police Officer Douglas Williams ("Williams") and Sergeant Vernard (Bud) Gillman ("Gillman"). Plaintiff has confirmed that Williams and Gillman are the only defendants he is actively pursuing in this case, and that he has abandoned his claims against the other named defendants, who are employees of the Rock Island Sheriff's Department and State's Attorney's Office.

On August 30, 2003, at around 9:30 p.m., Officer Williams was patrolling the Century Wood Apartments in Rock Island when he spotted an unidentified white male riding a bicycle nearby, later determined to be Bloomer. Because a minor resident of the apartment complex had recently reported being fondled by an white male who rode a bicycle, Officer Williams wished to speak with the bicycle rider.

Officer Williams began following the bicyclist from his squad car, but did not activate the lights or siren, and called out to the rider to identify himself. The bicyclist continued to ride away from Williams, refusing to respond to Williams' request and saying "I don't know who you are."

As Bloomer continued to ride away from Williams, he violated various provisions of the Illinois Motor Vehicle Code, including failing to stop at intersection stop signs and failing to signal several turns. Moreover, Bloomer's bike was not equipped with a headlight, as required by law. Officer Williams continued to follow to the bicyclist, who appeared to be attempting to evade contact with Williams because he made several turns and continued to pedal faster. When Williams asked Bloomer to pull over, Bloomer refused, saying "I don't know who you are. I haven't done anything." Bloomer Dep., at 14. Bloomer stated in his deposition that he was attempting to get away from Williams because he had not done anything wrong and did not want to answer any of Williams' questions.

Finally, Williams informed his dispatch that he was going to be arresting a bicyclist. Williams demanded that Bloomer stop and pull the bicycle over. Bloomer refused, continued to ride away from Williams, and stated that he would not pull over because he did not know to whom he was speaking. When they got to an alley near the intersection of 14th Avenue and 9th

Street, Bloomer apparently had trouble with the chain on his bike and had to stop. Williams parked his car, ran toward Bloomer, and announced that he was under arrest. Bloomer was aware that Williams had gotten out his squad car while he was putting the chain back on his bicycle.

Bloomer and Williams provide conflicting accounts of what happened next. Williams states in his affidavit that he was unsure of whether Bloomer had grabbed a weapon when he had stopped and bent over. Williams also states in his affidavit that after he yelled at Bloomer that he was under arrest, Bloomer looked up and got back on his bicycle. Williams pursued Bloomer, now on his bicycle, and tried to stop him. Williams then ran alongside the bicycle and attempted to administer pepper spray to Bloomer's facial area, but Bloomer had turned his face away to avoid the spray. Bloomer continued to ride away from Williams, Williams knocked him off his bicycle, and when Bloomer again reached for his bicycle, Williams successfully administered pepper spray to Bloomer's facial area.

Bloomer states in his deposition that he had stopped to fix the chain on his bicycle, that he was "pretty sure" that he did not get back on his bicycle before Williams sprayed him. However, he did grab his bicycle and try to run away from Williams because he did not want to talk to him, and Williams then sprayed pepper spray into Bloomer's eyes. Bloomer Dep., at 28. Even after being pepper sprayed, Bloomer stated that he continued his attempt to flee, and was then tackled. While Bloomer's Complaint alleges that it was Sergeant Gillman who tackled him, Williams states that he was the one who made the tackle, and Bloomer admitted in his deposition that he could not actually see who took him down.

Williams states in his affidavit that, pursuant to his training and the policy of the City of

-3-

Rock Island based upon the Use of Force Model, both the tackle and the use of pepper spray were proper tactical responses where a suspect is actively fleeing or resisting arrest.

Bloomer was eventually handcuffed and placed in the back of a Rock Island police squad car. Sergeant Gillman arrived at the scene only after Bloomer was already in custody in the squad car. Gillman got in the car with Bloomer and questioned him, requesting that he provide his name. Bloomer refused. A third unidentified officer transported Bloomer to jail. The defendant police officers left Bloomer the with jailers and had no further contact with Bloomer until he was released from jail.

Bloomer was arrested for the offense of resisting arrest, obstructing justice, and eight separating moving violations under the Illinois Motor Vehicle Code, which Williams observed Bloomer commit while he was attempting to evade police contact. Bloomer was ultimately charged with only the moving violations, and those charges were dismissed prior to trial by jury.

Bloomer filed this action on August 29, 2005. As mentioned above, while Bloomer's Complaint named several defendants, Bloomer has confirmed that he is only pursuing defendants Williams and Gillman. The Complaint appears to state seven counts that could possibly be construed as being brought against either Williams or Gillman. On April 20, 2007, Williams and Gillman filed a Motion for Summary Judgment, arguing that they are entitled to judgment as a matter of law on all seven counts. Bloomer filed a brief response to the Motion, which makes no legal argument, contains no response to the Officers' statement of undisputed facts, and does not offer any citation to the record. Bloomer argues only that, in the Officers' Answer to the Complaint, Williams had denied pepper spraying him, but later admitted to spraying him. The Officers declined to file a reply brief, but did file a Motion to Amend one paragraph of their

Answer in which they had denied the following allegation: "Bloomer was putting the chain on [his bicycle] when pepper-sprayed by Rock Island Police Officer Doug Williams on August 30, 2003, at approximately 8:30 pm in the vicinity of the inter-section of 9th Street and 16th Avenue...." For good cause shown, the Court permitted the Officers to clarify their Answer to admit Williams did pepper spray Bloomer in the vicinity of the intersection of 9th Street and 16th Avenue or thereabouts, but to deny that Bloomer was pepper-sprayed while he was putting the chain on his bicycle.

Despite the inadequacy of Bloomer's Response to the Motion for Summary Judgment, which could be construed as an admission of the Officers' legal argument, the Court will proceed to address the legal issues. This Order follows.

**DISCUSSION**

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets its burden, the nonmoving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec.*

*Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.*, 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial — whether, in other words, there are any genuine factual issues that can properly be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson*, 447 U.S. at 249; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir. 1995). Finally, "[w]here a party bears the burden of proof on an issue, he or she must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact requiring trial." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993).

### A. Assault

Bloom's first count alleges that he was assaulted when Officer Williams used pepper spray on him while he was putting the chain back on his bicycle. He also alleges that Sergeant Gillman tackled him. However, Bloomer admitted that he was grabbing his bike and trying to run away when Williams sprayed him, and that he continued to flee after being sprayed.

As an initial matter, the Court notes that while Bloomer's Complaint alleges that it was defendant Gillman who tackled him, both Williams and Gillman stated in to their affidavits that it was Williams who did the tackling. Also, in his deposition, Bloomer confirmed that he could not actually see who it was that tackled him. Therefore, because Bloomer has provided no competent evidence to contradict the defendants' factual showing that Gillman did not tackle Bloomer, defendant Gillman is entitled to summary judgment on this count.

With respect to Bloomer's allegations regarding Williams' use of pepper spray, Bloomer

has technically titled his first claim "assault," which is "reasonable apprehension of an imminent battery." *McNeil v. Carter*, 318 Ill. App. 3d 939, 943 (3rd Dist. 2001). It appears, however, that Bloomer's allegations are essentially that Officer Williams was not justified in using pepper spray in the course of apprehending him, that is, that Officer Williams used excessive force in detaining him.[1]

Williams argues that he is entitled to qualified immunity. Accordingly, Bloomer must establish both that a reasonable jury could find from the evidence that the Officers violated a constitutional right, and that the right was clearly established at the time. *Payne v. Pauley*, 337 F.3d 767, 775 (7th Cir. 2003).

A court determines whether an officer has used excessive force in effectuating an arrest, thereby violating the arrestee's Fourth Amendment rights, based on a standard of "'objective reasonableness,' that is from 'the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003). An officer's use of force is unconstitutional if, judging from the totality of the circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest. *Id*. This is inquiry is "fact specific," and a court should balance the intrusion on the individual against the governmental interests at stake. *Id*. The specific facts a court should consider include the severity of the crime at issue, whether the suspect poses an immediate threat to safety of anyone, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id*.

---

[1] Bloomer may also be claiming that Officer Williams was unjustified in stopping or arresting him, and therefore he had no right to touch him and therefore is liable for battery. However, as will be explained below in section C of this opinion, the undisputed facts establish that there was probable cause to both stop and arrest Bloomer.

Finally, the Court is mindful of the Supreme Court's instruction that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Grahm v. Connor*, 490 U.S. 386, 396-97 (1989).

It appears that the Seventh Circuit has yet to thoroughly address a qualified immunity defense in a case involving the use of pepper spray in circumstances comparable to these. *See Graham v. Hildebrand*, 203 Fed. Appx. 726, 731 (7th Cir. 2006) (noting lack of precedence on issue). However, other circuits have found an officer's use of pepper spray to be reasonable when the individual sprayed was either resisting arrest or refusing reasonable police requests. *Wagner v. Bay City, Tex.*, 227 F.3d 316, 324 (5th Cir. 2000) (use of chemical spray objectively reasonable where suspect physically resisted arrest); *Ludwig v. Anderson*, 54 F.3d 465, 471 (use of pepper spray was reasonable where individual refused to obey police orders); *see also Lawyer v. City of Council Bluffs, Iowa*, 240 F. Supp. 2d 941, 953 (S.D. Iowa 2002) (aff'd 361 F.3d 1099 (8th Cir. 2004)) (use of pepper spray on motorists not excessive even where crimes were not serious and officers could not have felt their safety was threatened, where § 1983 plaintiffs were non-compliant with police instructions and reasonable officers could have believed they were resisting arrest). *But see Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) (use of pepper spray excessive where individual was already handcuffed in patrol car and posed no threat to officers).

Here, judging not from hindsight, but from the perspective of a reasonable officer in Williams' situation, Williams' use of pepper spray was not excessive, even accepting as true Bloomer's version of events. When Bloomer got off of his bicycle and bent over, Williams was

unsure whether Bloomer was getting a weapon.  Moreover, Bloomer had been resisting Williams for blocks.  When Williams was following Bloomer from his car, Bloomer repeatedly refused Williams' requests that he stop, and shouted that he would not stop because Bloomer "did not know [him]." When Williams eventually pursued Bloomer on foot, Bloomer admits that he continued to resist Williams and grabbed his bicycle and ran from Williams even after Williams announced that Bloomer was under arrest.

Even if objective reasonableness were in dispute, the second step in the qualified immunity analysis protects "officers from the sometimes hazy border between excessive and acceptable force . . . and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." *Saucier v. Katz,* 533 U.S. at 194, 206 (2001) (internal quotations omitted); *see Hope v. Pelzer,* 536 U.S. 730, 740 ("the unlawfulness must be apparent").  Here, Williams' undisputed testimony is that his use of pepper spray under the circumstances fully complied with his training and the City of Rock Island Use of Force Model, cutting against any potential argument that a reasonable officer in Williams' position should have known that his use of pepper spray to detain Bloomer was unconstitutional, and the governing law was not so clearly established as to have given Williams fair warning that his use of pepper spray to arrest Bloomer was unlawful.

Because Williams is entitled to qualified immunity, he is entitled to judgment as a matter of law on the first count of Bloomer's complaint.

**B. Denial of Counsel of Choice**

Bloomer's second count alleges that the Rock Island Police Officers would not allow Bloomer to speak to counsel after they pepper-sprayed him and placed him in the squad car.  He

also alleges that certain jail officials would not allow him to speak to an attorney, but Bloomer has abandoned his claims against those defendants.

The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  Moreover, it is well established that "a person is entitled to the service of a lawyer 'at or after the initiation of adversary criminal proceedings - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Quadrini v. Clusen*, 864 F.2d 577, 585 (7th Cir. 1989) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)); *see also U.S. v. Gouveia*, 467 U.S. 180, 190 ("[W]e have never held that the right to counsel attaches at the time of arrest.").

While the parties dispute whether Bloomer requested to speak with an attorney during his arrest, this factual dispute is irrelevant.  Because Bloomer had no right to counsel during his arrest or immediately following it, and admits that he did not have contact with Williams or Gillman after he was transported to the jail, the defendants are entitled to judgment as matter of law on this count.

**C. Malicious Prosecution, False Arrest, and False Imprisonment**

Bloomer's third, fourth, and fifth counts attempt to state claims for malicious prosecution, false arrest, and false imprisonment.  Here, the Officers argue that they had probable cause to arrest Bloomer, and as the Officers point out, probable cause is an absolute defense to actions for malicious prosecution, false arrest, and false imprisonment, whether they are brought under a state or federal theory.  *Schertz v. Waupaca County*, 875 F.2d 578, 582 (7th Cir., 1989) ("Regardless of the defendants' motives toward the plaintiff, the existence of probable cause for arrest is an absolute bar to a Section 1983 claim for unlawful arrest, false imprisonment, or

malicious prosecution."); *Jones v. Village of Villa Park*, 1993 WL 437415, at *3 (N.D. Ill. October 17, 1993) (same rule for state law versions of these three claims) (rev'd on other grounds).

Probable cause is defined as "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Fabiano v. City of Palos Hills*, 336 Ill.App.3d 635, 642 (1st Dist. 2006). In general, if the defendant commits an offense in the full view of the police officer, probable cause exists for an arrest. *See People v. Harris*, 352 Ill.App.3d 63 (1st Dist. 2004). It is the state of mind of the person commencing the prosecution that is at issue - not the actual facts of the case or the guilt or innocence of the accused. *Sang Ken Kem v. City of Chicago*, 368 Ill.App.3d 648, 654 (1st Dist. 2006).

The Seventh Circuit decision of *U.S. v. Rankins*, 118 Fed. Appx. 62 (7th Cir. 2004), is especially instructive here on the issue of probable cause. In *Rankins*, a Rockford, Illinois, police officer observed the defendant parked in a suspicious area. Two officers, in separate squad cars, began to follow the defendant in his vehicle, and the defendant failed to stop at a stop sign. *Id*. at 63. The pursuit ended when the defendant pulled in a driveway and emerged from his car, yelling that the officers had "no probable cause" to stop him. *Id*. When the officers attempted to place the defendant in handcuffs, a struggle ensued. *Id*. Eventually, the officers discovered 50 small bags of crack cocaine on the defendant. *Id*. The defendant was taken to the police station and was issued two traffic citations for running the stop sign and attempting to flee. *Id*. at 64.

While the defendant in *Rankins* argued that the officers lacked either probable cause or reasonable suspicion to stop him, the Seventh Circuit stated:

> A police officer who has probable cause to believe that a driver has committed a traffic infraction - even a minor one - may make a traffic stop. The officer's subjective motivations for making the stop are irrelevant. [The second officer] was permitted to stop [the defendant] for running the stop sign, independent of any concern about the reasonableness of [the first officer's] earlier suspicions about the car's presence outside the housing project. Moreover, when [the defendant] refused to stop for [the officer], he committed a misdemeanor that further justified the stop.

*Id*. at 63 (internal citations omitted). Furthermore, when a person near a criminal scene flees upon seeing a police officer approach, the officer may develop a reasonable suspicion to conduct an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968). *Rankins*, 118 Fed. Appx., at 63. Therefore, the officers had acquired probable cause to stop the defendant's car when he ran the stop sign and refused to stop. *Id.*

Here, similar to *Rankins*, Bloomer's admitted attempts to evade Officer Williams, combined with his repeated violations of the traffic laws, gave Williams a reasonable suspicion to justify an investigatory stop. The fact that Bloomer attempted to flee after Williams told him to stop because he was under arrest constitutes probable cause for taking him into custody. Moreover, contrary to Bloomer's statement in his Complaint that traffic violations are not "arrestable offenses," the Officers could have made a full custodial arrest for just the minor traffic offenses, even if Bloomer had not resisted them. *Id.* at 64 (citing *U.S. v. Garcia*, 376 F.3d 648, 650 (7th Cir. 2004); *see also People v. Wright*, 286 Ill. App.3d 456 (1996) (defendant's flight from police, who were attempting to justifiably stop him, provided probable cause to arrest). Because the Officers had probable cause to both stop Bloomer and place him under custodial arrest, they are entitled to judgment as a matter of law on Bloomer's claims for malicious prosecution, false arrest, and false imprisonment.

**D. Denial of Bail**

Bloomer's sixth count states that his money was seized from him at the time he was arrested, and that he was apparently not able to use that money to post his bail and get out of jail. However, the undisputed evidence is that neither of the acting defendants—Officers Williams and Gillman—took Bloomer's money or in any way participated in the inventory search and seizure of personal property. Because Bloomer has failed to create a triable issue of fact from which a jury might infer he is entitled to relief, the Officers are entitled to judgment as a matter of law on this count.

**E. Denial of Fifth Amendment Rights**

Bloomer's seventh count states that the Rock Island Police Department, the Rock Island County Jailers, and Prosecutor Marshall Douglas punished Bloomer when he exercised his Fifth Amendment rights.

This allegation is particularly vague, as it does not say how he was punished by any of these defendants or what Fifth Amendment Rights were violated. Although it is not mentioned in Bloomer's Complaint or his deposition, Williams and Gillman speculate that Bloomer may be alleging that he was arrested for failing to give the police his name. However, the undisputed evidence provides that Bloomer was arrested because he was attempting to flee police contact and in the process committed violations of the Illinois Motor Vehicle Code. Because Bloomer has failed to allege, let alone establish, any facts which could entitle him to relief for the denial of his Fifth Amendment rights, the Officers are entitled to summary judgment on this count.[2]

---

[2] Bloomer's Complaint also sets forth an eighth cause of action entitled "Prosecutor acted as Judge." Because the allegations of this count could in no way be construed as being brought

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment [#21] is granted.  This matter is now TERMINATED.


ENTERED this 17th day of July, 2007.

        s/Michael M. Mihm
        Michael M. Mihm
        United States District Judge

---

against Williams or Gillman, the only defendants against whom Bloomer is proceeding, that count is also dismissed.